UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DELTA M.[1], <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY[2], <br><br> Defendant. | CASE NO. 3:25-CV-225-SJF |

**OPINION and ORDER**

Plaintiff Delta M. ("Ms. M") seeks judicial review of the Social Security Commissioner's decisions denying Ms. M's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This Court may enter a ruling based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). [DE 11]. For the reasons discussed below, the Court **REMANDS** the decisions of the Commissioner of the Social Security Administration ("SSA").

**I.  OVERVIEW OF THE CASE**

Ms. M filed her applications for DIB[3] and SSI on September 10, 2021, alleging disability beginning August 25, 2020. (Administrative Record[4] 21, 58; hereinafter "AR").

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.
[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Under Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.
[3] Ms. M's DIB application was an expedited application for reinstatement of her Title II benefits after the Commissioner found that she was no longer eligible for such benefits on September 1, 2017. (AR 24).
[4] Administrative record page numbers are noted in the bottom right corner of each page.

She was denied initially, on reconsideration, and after a hearing before an administrative law judge ("ALJ"). (*Id.*). The ALJ issued unfavorable decisions on June 28, 2024, and July 22, 2024, respectively. (AR 46, AR 79). Ms. M then requested further review of the ALJ's decisions, and the Appeals Council denied this request on January 17, 2025. (AR 1, AR 13). Thus, the ALJ's decisions became the final decisions of the Commissioner. *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Ms. M filed suit in this court on March 13, 2025. This Court has jurisdiction under 42 U.S.C. § 405(g).

## II. APPLICABLE STANDARDS

### A. Disability Standard

To qualify for DIB and SSI, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB under the Act includes determinations of: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can

perform his past relevant work based on his Residual Functional Capacity ("RFC"); and, if not, (5) whether the claimant is able to perform other work. 20 C.F.R. §§ 404.1520. The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000).

### B.     Standard of Review

The Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). But this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not

reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of no disability, however, the ALJ must confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)(citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

If the ALJ's decision is not supported by substantial evidence, remand is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

### III.   DISCUSSION

#### A.   Summary of the ALJ's Decisions Denying Benefits

Ms. M's telephone hearing before the ALJ took place on June 4, 2024. (AR 24, 58). Ms. M was represented by an attorney. On June 28, 2024, and July 22, 2024, the ALJ issued written decisions denying Ms. M's applications, conducting the requisite five-

4

step analysis for evaluating claims for disability benefits.[5] 20 C.F.R. § 404.1520. (AR 46, AR 79).

    At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Ms. M had not engaged in substantial gainful activity from the date of her applications through the dates of the ALJ's decisions. (20 C.F.R. § 404.1571 et seq., and § 416.971 et seq[6].). (AR 27, AR 60).

    At Step Two, an ALJ's inquiry focuses on whether the claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. The ALJ concluded that Ms. M suffered from the following severe impairments: bipolar disorder, generalized anxiety disorder, substance use disorder, post-traumatic stress disorder (PTSD), bilateral rotator cuff dysfunction, and status-post right shoulder acromioclavicular separation with joint stabilization. (AR 27, AR 61). The ALJ thus concluded that these medically determinable impairments significantly limit Ms. M's ability to perform basic work activities as required by SSR 85-28. On the other hand, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.*, 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1,

---

[5] Although the ALJ issued separate decisions for each application submitted by Ms. M, the decisions largely track the same findings for the five-step analysis. Accordingly, the Court summarizes them together in this Opinion and Order.
[6] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will largely refer to only 20 C.F.R. § 404 unless explicit distinction or discussion between the DIB and SSI regulations is necessary.

1985). The ALJ found that Ms. M had the following nonsevere impairments: degenerative changes of the lumbar spine, obesity, ankle fracture, chronic obstructive pulmonary disease. (AR 61-62).

The ALJ concluded at Step Three that Ms. M does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). The ALJ considered Listings 1.18, 12.04, 12.06, and 12.15. (AR 27-28; AR 62-63). Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Ms. M can perform her past relevant work based on her residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that an individual can do despite her limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ concluded that Ms. M retained the RFC to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b). The ALJ determined that Ms. M could:

> Perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to lifting, carrying, pushing, and pulling 10 pounds frequently and 20 pounds occasionally. The claimant can sit for six

6

> hours in an eight-hour workday and can stand and/or walk for six hours in an eight-hour workday. The claimant should not climb ropes, ladders, or scaffolds. The claimant can occasionally kneel, crouch, and crawl. The claimant can occasionally bend and stoop. The claimant can perform the balance required of such activities. The claimant can frequently reach forward and to the side with the upper extremities but no overhead reaching. The claimant should not perform work at exposed heights and open and dangerous machinery such as those with fast moving and exposed blades and open flames. The claimant is limited from concentrated exposure to excessive airborne particulate, dusts, fumes, and gases and excessive heat, humidity and cold such as when working outside or within a sawmill, boiler room, chemical plant, green house, refrigerator unit or sewage plant. The claimant can perform simple tasks in a routine work environment and render judgments, make decisions, and cope with stresses related to such work. The claimant is able to tolerate occasional interaction with coworkers, supervisors, and the public, but she should perform no tandem work.

(AR 31, AR 64-65). Based on this RFC, at Step Four, the ALJ found that Ms. M was unable to perform her past relevant work as a screw machine operator, prep cook, group leader, and finisher. (AR 44, AR 77). Accordingly, the ALJ moved on to last step in the five-step sequential analysis to determine whether Ms. M could perform other work.

At Step Five, the burden of proof shifts to the Commissioner, who must "provid[e] evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [her] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2); *see also Liskovitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009). The ALJ found that, while Ms. M could not perform any past relevant work, she retained the RFC to perform the representative jobs of molding machine tender (approximately 70,000 jobs nationally), inspector/hand packer

7

(approximately 167,000 jobs nationally), and electronic assembler (approximately 192,000 jobs nationally). (AR 45-46, AR 78-79).

Finding that Ms. M could make an adjustment to other work that existed in significant numbers in the national economy, the ALJ determined that Ms. M's disability ended on September 1, 2017 (as to her request for reinstatement of DIB benefits) and that she has not been under a disability since September 10, 2021, the date her application for SSI was filed. (AR 46, AR 79).

B.   **Issue for Review**

On review, Ms. M challenges the ALJ's evaluation of the medical opinion evidence and prior administrative medical findings in the record.[7] The ALJ evaluated opinions from the following medical providers in his decisions: the opinions of Dr. Russell G. Coulter-Kern, Ph.D., a state agency consultative examiner who evaluated Ms. M twice; Drs. Kari Kennedy Psy.D. and Maura Clark Ph.D. non-examining state agency physicians; Dr. Scott Ehmen, M.D., a state agency consultative examiner; and Dr. J. Sands, M.D. and Dr. J.V. Corcoran, M.D., non-examining state agency physicians. (AR 39-43, AR 73-6). Ms. M challenges the ALJ's evaluation of each opinion, contending that the ALJ erred by failing to adequately explain why he rejected these opinions and that the ALJ's decision to reject all expert opinions or findings requires remand. [DE 23 at 15-27]. As to Dr. Coulter-Kern, Ms. M also contends that, because the ALJ found his opinions to be "vague" or without sufficient explanation, the ALJ had a duty to

---

[7] While the ALJ issued separate decisions on Ms. M's applications for DIB and SSI, the ALJ's discussion of the medical opinion evidence and prior administrative medical findings is the same.

8

recontact Dr. Coulter-Kern under the regulations but failed to do so. [DE 13 at 19, citing 20 C.F.R. § 404.1519p(b) and 20 C.F.R. § 416.919p(b)]. In response, the Commissioner maintains that the ALJ's evaluation of the medical opinion evidence was consistent with the ALJ's obligations under the regulations and that the ALJ provided substantial support for the finding of no disability. [DE 17].

As discussed below, the Court agrees with Ms. M that the ALJ had a duty to recontact Dr. Coulter-Kern for clarification if he felt that the evaluation reports were vague. Accordingly, remand is required here.

### C. Dr. Russell Coulter-Kern, Ph.D.

#### 1. Dr. Coulter-Kern's Examinations and Opinions

Dr. Russell Coulter-Kern, Ph.D. is a psychologist who performed two consultative examinations for Ms. M: first on December 6, 2021, and again on June 12, 2023. Dr. Coulter-Kern's evaluations included background information, his observations as to Ms. M's behavior and appearance, an overview of Ms. M's reported daily activities and behavioral health, a mental status examination, and a medical source statement or summary.

In the December 2021 examination, Dr. Coulter-Kern observed that Ms. M had fair hygiene, casual and appropriate dress, normal posture, normal motor behavior, good cooperation, alert responsiveness, appropriate eye contact, normal speech, and logical consistent thought process. (AR 732). Dr. Coulter-Kern also noted Ms. M described her mood as "okay," that she was tearful throughout the examination, and that her affect was consistent with her reported mood. (*Id.*). For Ms. M's mental status

9

exam, Dr. Coulter-Kern noted normal responses except for errors in Ms. M's five-minute recall, a calculation error, and that she performed her serial 7's with 4 errors and stopped after 30 seconds. (AR 734). At the conclusion of the examination, Dr. Coulter-Kern's Medical Source Statement/Summary provided that:

> The client is 46-year-old female who has applied for disability benefits due to PTSD, bipolar disorder, dissociative disorder, manic depression, right shoulder, ankle/leg replacement (pending), and complications from auto accident. In general, the client was cooperative in responding to Mental Status Exam questions and in providing background information. She appeared to put forth good effort.
>
> The client reported depressive, manic, and anxious symptoms and displayed matching affect. Insight, reasoning, and judgment were normal. No formal thought disturbance was observed. Speech was normal. She appeared to be in moderate to severe distress. Rapport with the client was adequate. The client was able to follow simple instructions without repetition or clarification.
>
> Based on the client's responses to examination questions and behavioral observations, it appears that the client will have moderate to severe difficulty understanding, remembering, and carrying out instructions. The client will have moderate to severe difficulty maintaining attention and concentration. The client will have moderate to severe difficulty responding appropriately to supervision and coworkers in a work setting. The client will have moderate to severe difficulty coping appropriately to work pressures. The statements do not take into account physical. Based on client's performance on the exam, it is believed that the client is capable of managing her own financial affairs.

(AR 735). Dr. Coulter-Kern then diagnosed Ms. M with unspecified bipolar and related disorder, Generalized anxiety disorder, Posttraumatic stress order, and social anxiety disorder. (*Id.*)

In the June 2023 examination, Dr. Coulter-Kern observed that Ms. M's hygiene was good, her manner of dress casual and appropriate, and her posture normal. (AR 851). Dr. Coulter-Kern also noted that Ms. M demonstrated good cooperation, alert responsiveness, appropriate eye contact, and logical and consistent thought processes. (*Id.*). But Dr. Coulter-Kern also observed that her motor behavior was restless, her

10

speech slightly pressured, her mood was "sad and nervous" and that she appeared to be in moderate/severe apparent distress, as she was tearful through much of the evaluation. (*Id.*) For her mental status examination, Dr. Coulter-Kern recorded normal responses except for an error in her serial 7's. (AR 854).

At the conclusion of this second examination, Dr. Coulter-Kern's Medical Source Statement/Summary stated that

> The client is a 48-year-old female who has applied for disability benefits due to PTSD, bipolar, dissociative disorder, manic depression, right shoulder, right ankle/leg replacement (pending), and complication from auto accident. In general, the client was cooperative in responding to Mental Status Exam questions and in providing background information. She appeared to put forth good effort.
>
> The client reported depressive, anxious, and manic symptoms and displayed appropriate affect. Insight, reasoning, and judgment were fair to good. No formal thought disturbance was observed. Speech was somewhat pressured and 100% understandable. She appeared to be in moderate to severe distress—and was tearful much of the evaluation. Rapport with the client was good. The client was able to follow simple instructions with minimal to moderate repetition and clarification by the examiner.
>
> Based on the client's responses to examination questions and behavior observations, it appears that the client will have minimal to moderate difficulty understanding instructions. The client will have minimal to moderate difficulty remembering and carrying out single-step instructions. The client will have moderate to severe difficulty remembering and carrying out multi-step instructions. The client will have moderate difficulty maintaining attention and concentration. The client will have severe difficulty responding appropriately to supervision and coworkers in a work setting. The client will have moderate to severe difficulty coping appropriately to work pressures. These statements do not take into account physical limitations. Based on the client's performance on the evaluation and her self-report of inability to manage money, it is believed that the client will need assistance managing her financial affairs.

(AR 854-55). Dr. Coulter-Kern then diagnosed Ms. M with unspecified Bipolar and Relate disorder, Generalized Anxiety Disorder, Social Anxiety Disorder, Posttraumatic Stress Disorder, Opioid Use Disorder, and Stimulant Use Disorder. (AR 855).

11

### 2. The ALJ's Evaluation of Dr. Coulter-Kern's Opinions

In his decision, the ALJ found that Dr. Coulter-Kern's opinions were "not persuasive," thus stating they were not "not given significant weight." (AR 41, AR 75). The ALJ discussed findings and statements from both examinations, recounting many of Dr. Coulter-Kern's observations and Ms. M's responses during the mental status examinations.

The ALJ noted that Dr. Coulter-Kern's 2021 examination found Ms. M to be in moderate and severe distress and that Dr. Coulter-Kern stated that she was depressive, manic, and anxious, with matching affect. But the ALJ stated that Dr. Coulter-Kern's medical source statement "did not explain why as this is a high contrast to the mental status examination." (AR 39-40, AR 73). The ALJ also observed that Dr. Coulter-Kern opined that Ms. M "would have moderate to severe difficulty in all functional areas . . ." in his medical source statement. (AR 40, AR 73). But the ALJ rejected these findings, stating that "[s]uch findings were not rendered with a description of the supportive findings with a link between logical and consistent thought process, no thought disturbance, normal reasoning, the ability to follow simple instructions, etc., and such limitations." (*Id.*). In sum, the ALJ noted that these limitations were "with minimal explanation and not well supported internally." (*Id*). Thus, although the ALJ noted that Dr. Coulter-Kern has "specialization and program knowledge" the ALJ found that here, "his conclusions are too vague to assist in formulating a residual functional capacity finding for the claimant and are not supported." (*Id.*).

12

The ALJ also discussed Dr. Coulter-Kern's evaluation and medical source statement from 2023. The ALJ acknowledged Dr. Coulter-Kern's observations that Ms. M exhibited restless motor behavior, slightly pressured speech, and that she was tearful through the examination. (AR 40, AR 73). The ALJ noted that Ms. M had normal responses in her mental status examination except for an error in her serial 7's. (AR 40, AR 74). The ALJ noted Dr. Coulter-Kern opined that Ms. M "would have minimal to moderate difficulty understanding, remembering, or carrying out simple one-step instructions; she would have moderate to severe difficulty remembering or carrying out multiple-step instructions; she would have moderate difficulty maintaining attention and concentration; she would have severe difficulty responding appropriately to supervision and coworkers; she would have moderate to severe difficulty coping appropriately to work pressures." (AR 40, AR 74). The ALJ discounted these statements in part by referencing Dr. Coulter-Kern's other findings in the report, stating that "[l]ittle else is cited as support." Moreover, the ALJ noted that Dr. Coulter-Kern "did not state how long such limitations of function had or would exist." (AR 40, AR 74). The ALJ's discussion of Dr. Coulter-Kern's opinions concluding by repeating that "Dr. Coulter-Kern did not explain as to how long such limitations of function had existed or would exist with respect to the time frames in issue." (AR 40, AR 74).

### 3.     Ms. M's Arguments under 20 C.F.R. § 404.1519p(b) and 20 C.F.R. § 416.919p(b)

As stated, Ms. M contends that the ALJ had a duty to recontact Dr. Coulter-Kern if he believed that his opinions were insufficient because they were too vague or

13

insufficiently explained, citing 20 C.F.R. § 404.1519p(b) and 20 C.F.R. § 416.919p(b)[8] in support. The Court agrees.

"A consultative examination is a physical or mental examination or test purchased for [a claimant] at [the Commissioner's] request and expense from a treating source or another medical source . . . ." 20 C.F.R. § 404.1519. Consultative examiners are required to prepare a report of their examination. The content of the report "must be complete enough to help [the Commissioner] determine the nature, severity, and duration of the impairment, and residual functional capacity." *Id.* § 404.1519n(b); 20 C.F.R. § 416.919n(b). Under 20 C.F.R. § 404.1519p(b) and 20 C.F.R. § 416.919p(b), if a report rendered by a consultative examiner like Dr. Coulter-Kern is considered "inadequate or complete," the Commissioner must "contact the medical source who performed the consultative examination, give an explanation of [the] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." *Id.*

As stated, Ms. M contends that the ALJ's finding that Dr. Coulter-Kern's report was vague implied that it was incomplete or inadequate, triggering the duty to recontact Dr. Coulter-Kern under the regulations. The Court begins by determining whether the ALJ's statements implied that the report was inadequate or complete. Here, the ALJ rejected Dr. Coulter-Kern's opinions by explaining that "the limitations are with

---

[8] 20 C.F.R. § 416.919p(b) applies to applications for SSI, while 20 C.F.R. § 404.1519p(b) governs DIB. That said, the provisions are "materially identical" making "the analysis the same." *Mark R. v. Bisignano*, No. 1:25-CV-00572-TAB-SEB, 2026 WL 262130, at *1 fn.1 (S.D. Ind. Feb. 2, 2026).

14

minimal explanation," his conclusions were "too vague to assist in formulating a residual functional capacity finding" and because he "did not explain how long such functions of limitation had existed or would exist with respect to the time frames in issue." (AR 40, AR 73-74). These statements suggest that the ALJ found the reports to be incomplete or inadequate regarding both the duration of Ms. M's impairments and her residual functional capacity—two report content elements listed in 20 C.F.R. § 404.1519n(b) and 20 C.F.R. § 416.919n(b). *See id.* (stating that a consultative examiner's report "must be complete enough to help [the Commissioner] determine the nature, severity, and duration of the impairment, and residual functional capacity.") Based on this, the Court can only find that the ALJ believed Dr. Coulter-Kern's report was inadequate or incomplete. *See Mark R. v. Bisignano*, No. 1:25-CV-00572-TAB-SEB, 2026 WL 262130, at *3 (S.D. Ind. Feb. 2, 2026)(finding 20 C.F.R. § 404.1519p(b) applied when an ALJ deemed a consultative examiner's opinion vague because it did not define the meaning of "slight or some"); *Greer v. Comm'r of Soc. Sec.*, No. 3:24-CV-795-CCB-SJF, 2025 WL 2655929, at *3 (N.D. Ind. Sept. 15, 2025)(finding that 20 C.F.R. § 404.1519p(b) applied after the ALJ found a consultative examiner's opinion vague because it did not include "metrics" for limitations); *La'Toya R. v. Bisignano*, No. 1:24-CV-01564-JMS-TAB, 2025 WL 1413807, at *5 (S.D. Ind. May 15, 2025)(finding that 20 C.F.R. § 416.919p applied after the ALJ discounted a consultative examiner's report as "vague" for failure to address "associated standing, walking, postural, or environmental limits"); *REGINALD H., Plaintiff, v. MARTIN O'MALLEY, Comm'r of Soc. Sec., Defendant.*, No. 24 C 3827, 2025 WL 4109413, at *1 (N.D. Ill. Jan. 8, 2025)(finding that 20 C.F.R. § 404.1519p(b) was

15

triggered where an ALJ found the consultative examiner's opinion "vague" because it did "not set forth what limitations the claimant's impairments would cause on his ability to perform work-related activities").

Accordingly, because the ALJ believed Dr. Coulter-Kern's report was incomplete or inadequate, the ALJ had a "regulatory duty" to recontact Dr. Coulter-Kern. *See Cieszynski v. Kijakazi*, No. 22-2024, 2023 WL 2523499, at *5 (7th Cir. Mar. 15, 2023) (unpublished decision) (stating that when a consultative examiner does "not provide any specific limitations or explain the rationale for his conclusions," the ALJ has a "regulatory duty" to "follow[ ] up with the doctor."); *see also La'Toya R.*, 2025 WL 1413807, at *5 ("This provision [discussing 20 C.F.R. § 416.919p(b)] is mandatory[.]")

In response, the Commissioner contends that he was not required to recontact Dr. Coulter-Kern because there was adequate information in the record to render a decision, citing 20 C.F.R. § 404.1520b(b)(1) in support of his argument. But the Court cannot find this response availing. 20 C.F.R. § 404.1520b(b)(1) states that "[i]f any of the evidence in your case record, including any medical opinion(s) and prior administrative medical findings, is inconsistent, [the Commissioner] will consider the relevant evidence and see if [the Commissioner] can determine whether [a claimant is] disabled based on the evidence [the Commissioner] ha[s]." Other courts in this circuit have addressed this same argument, clarifying that these two provisions "differ in [ ] scope." *La'Toya R.*, 2025 WL 1413807, at *5 (addressing 20 C.F.R. § 416.919p); *see also Mark R.*, 2026 WL 262130, at *3 (addressing 20 C.F.R. § 404.1519p(b)). Indeed, "[s]ection 416.920b(b)(2)(i) extends to insufficiencies and inadequacies of the entire 'case record,'

whereas Section 20 C.F.R. § 416.919p addresses insufficiencies and inadequacies solely of a consultative examiner's report." *La'Toya R.*, 2025 WL 1413807, at *5. Without more, the Court cannot find that the Commissioner's reliance on 20 C.F.R. § 404.1520b(b)(1) supplants the mandate to recontact a consultative examiner in 20 C.F.R. § 404.1519p(b) and 20 C.F.R. § 416.919p(b). Indeed, to the extent that the ALJ found the consultative examiner's report inconsistent with the examination findings, this was "further reason to contact [him] for clarification." *Mark R.*, 2026 WL 262130, at *4. Thus, consistent with other courts in this circuit, remand on this issue is appropriate. *See Mark R.*, 2026 WL 262130, at *5; *Greer*, 2025 WL 2655929, at *4; *La'Toya R.*, 2025 WL 1413807, at *5; *Reginald H. v. O'Malley*, No. 24 C 3827, 2024 WL 4555409, at *3 (N.D. Ill. Oct. 23, 2024); *Robert D. v. Kijakazi*, No. 22 C 3714, 2023 WL 4825678, at *2 (N.D. Ill. July 27, 2023); and *Tanya S. v. Kijakazi*, No. 2:21CV38, 2021 WL 6201733, at *12 (N.D. Ind. Dec. 31, 2021)(finding that "the ALJ had a potentially disabling opinion from a consultative examining source and simply rejected it for vagueness, with minimal analysis, rather than making the barest of attempts to seek clarification. Thus, remand is required so that the ALJ may properly weigh the opinion of the examining physician.").

### D. Ms. M's Arguments About Other Medical Opinions

As stated, Ms. M contends that the ALJ's evaluation of other medical opinions and administrative medical findings in the record also requires remand. The Court declines to address these other arguments based on the issues identified with the ALJ's evaluation of Dr. Coulter-Kern's opinion. The ALJ will have the opportunity to fully

discuss and reevaluate Ms. M's allegations about other medical opinions and administrative medical findings on remand.

IV. **CONCLUSION**

For these reasons, the Commissioner's decision is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this opinion.

**SO ORDERED** this 25th day of February 2026.

s/Scott J. Frankel<br>
Scott J. Frankel<br>
United States Magistrate Judge